```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY

DALE HOUGHTON,              :
                            :         HONORABLE JOSEPH E. IRENAS
          Plaintiff,        :
                            :     CIVIL ACTION NO. 08-2162 (JEI/AMD)
     v.                     :
                            :
SUNNEN PRODUCTS CO.,        :              OPINION
                            :
          Defendant.        :
```

**APPEARANCES:**

WILLIAM RIBACK, LLC
By: William Riback, Esq.
132 Haddon Ave.
Haddonfield, New Jersey 08033
       Counsel for Plaintiff

LITCHFIELD CAVO, LLP
By: Kathleen J. Collins, Esq.
    Tobin A. Butler, Esq.
1800 Chapel Ave. West, Suite 360
Cherry Hill, New Jersey 08002
       Counsel for Defendant

**IRENAS**, Senior District Judge:

Plaintiff Dale Houghton, brings this employment discrimination action against his former employer, Defendant Sunnen Products Company ("Sunnen"), alleging state law age discrimination, retaliation, and breach of contract claims. Sunnen moves for summary judgment. Houghton cross-moves for partial summary judgment. For the reasons stated herein, Sunnen's Motion will be granted in part and denied in part.

Houghton's Motion will be denied.[1]

## I.

Sunnen manufactures highly specialized honing equipment that has two separate applications. The equipment can be used for automotive engine rebuilding, or it can be used on industrial machines. Prior to mid-2007, Sunnen's sales force was divided accordingly; Sunnen had "automotive" sales people and "industrial" sales people, each assigned to a specific geographic territory.

Houghton was employed as an automotive sales person for approximately 20 years. His sales territory encompassed, at various times, New Jersey, Delaware, Eastern Pennsylvania, New York City, Long Island, the New England states, Maryland, the Northern half of Virginia, and the Northern half of West Virginia. (Houghton Dep. p. 21-22)[2] It is undisputed that

---

[1] Subject matter jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332. Houghton is a citizen of New Jersey. Sunnen is a citizen of Missouri and Delaware. The amount in controversy exceeds $75,000.

[2] When Houghton started with Sunnen, he covered New Jersey, Delaware, Eastern Pennsylvania and New York City. (Houghton Dep. p. 21) In 1994, the Delaware territory was transferred to another salesman, and Houghton added the New England states and Long Island to his sales territory. (Id. at p. 22) From 1998 until he was terminated in 2008, Houghton's territory included Long Island, New York City, New Jersey, Delaware, Maryland, the Northern half of Virginia, and the Northern half of West Virginia. (Id. at p. 28)

Houghton's performance, relative to other Sunnen sales people, was "better than average." (Def's Response to Pl's Statement of Undisputed Facts ("SUF") ¶ 9)

Then, in 2007, as part of a reduction in force ("RIF"), Sunnen decided to eliminate its automotive sales division, choosing, instead, to employ independent contractors to sell a more limited selection of automotive honing equipment.[3] The parties do not dispute that the RIF eliminated the positions of all automotive sales people, including Houghton, who was 61 years old at the time. (Pl's Resp. To Def's SUF ¶ 11)[4]

In June, 2007, Sunnen held company-wide sales meetings at their headquarters in St. Louis.  Two separate meetings are of relevance to the instant case: an industrial sales meeting and an automotive sales meeting.

At the meeting of industrial sales people, Sunnen does not dispute that management raised the issue of retirement with certain older salesmen.  What exactly was said, and the tone of the meeting, however, are disputed.  According to Sunnen's

---

[3] Sunnen ultimately reduced the number of its automotive application products from 45 to 5. (Def's Resp. to Pl's SUF ¶ 15)

[4] Plaintiff's counsel, in his brief, states that Houghton was 63 at the time of his termination, but provides no supporting evidence.  The Second Amended Complaint asserts that Houghton was 61, and Plaintiff's Response to Defendant's Statement of Undisputed Facts admits that Houghton was 61.  Therefore, for the purposes of this motion, the Court assumes Houghton was 61.

30(b)(6) witness[5], Sunnen was not suggesting that anyone should retire; rather it was only asking that it be given sufficient advance notice of anyone's independently chosen retirement date, so as to allow for time to find a suitable replacement and ensure a smooth transition.  (Cereola 30(b)(6) Dep. p. 103-04)  On the other hand, according to Karl Beher, a 61 year-old industrial salesman who attended the meeting, he believed he was being "pressured to retire, regardless of performance," (Riback Cert. Ex. B) and it made him feel "very uncomfortable."  (Behr Dep. p. 18, 24)

Four people attended the automotive sales meeting: Houghton, Doug Treutelaar, Rick Saindon, and Bob Dolder.  It is undisputed that at the meeting, management announced that only two of the four men would be retained in other sales positions.  (Def's Response to Pl's SUF ¶ 30)  It is also undisputed that by the time the meeting was held, Sunnen had already decided to retain Saindon and Dolder and give them training in industrial sales.  (Id. ¶¶ 30, 34)  Houghton and Treutelaar, who are older than Saindon and Dolder, were not given the same opportunity to re-

---

[5] *See* Fed. R. Civ. P. 30(b)(6) ("In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity. . . . The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf. . . . The persons designated must testify about information known or reasonably available to the organization.")

4

train as industrial salesmen.  Sunnen offered Houghton and Treutelaar independent contractor positions selling Sunnen's remaining automotive honing equipment.[6]

Another younger automotive salesman, Richard Woodward, was also retained.  Sunnen created a new position for him rather than offering him an independent contractor position.  (Schallenberg Dep. p. 21, 23, 25; Cereola 30(b)(6) Dep. p. 92)  Sunnen initially offered Woodward an industrial sales position in the Florida territory, but Woodward declined the offer.  (Cereola Dep. p. 28-29)  Even after Woodward declined the Florida industrial position, Sunnen gave the spot to a newly-hired, 36 year-old salesman, rather than offering the spot to Houghton.  (Def's Response to Pl's SUF ¶ 70; Cereola 30(b)(6) Dep. p. 30)

Houghton, unwilling to accept the independent contractor position, and having been offered no other position with Sunnen, requested a severance.  In a written letter dated December 21, 2007, Sunnen offered Houghton a "retirement arrangement" which included three months base pay and benefits through the end of January, 2008.  (Butler Cert. Ex. E)  The letter included a signature line where Houghton could "accept" the terms of the "proposed" arrangement.  (Id.)

---

[6] It is undisputed that the independent contractor positions were less desirable than sales person positions because, among other things, Sunnen would not provide health benefits to independent contractors.

Houghton told a payroll representative, and then his supervisor, that he would not sign the letter. He testified at his deposition,

    A:    There was a letter of retirement and three months severance pay and [it] told me to sign it and send it back.

    Q:    Did you do that?

    A:    No.

    Q:    And why not?

    A:    I didn't retire.

    Q:    Did anyone advise you that you had to sign any kind of paperwork before you could get your severance?

    A.    Yeah, I got a telephone call from [a woman in the Payroll Department] and she told me she had my severance pay but couldn't send it until I signed the letter.

    . . .

    Q:    What did you tell her?

    A:    I told her I didn't retire, I wasn't signing it.

    . . . .

    A:    . . . The following day [my supervisor] called me with the same request, told me he had my severance pay and couldn't give it to me until I signed the letter of retirement. I told him I didn't retire, that my job was eliminated and he terminated my employment, that's what I wanted the letter to say. He said he couldn't send me my severance pay until I signed it. I said, well, then you're going to have to think of something else because I didn't retire.

(Houghton Dep. p. 85-86)

6

Then, after this lawsuit was filed, Houghton's attorney wrote to Sunnen on February 18, 2008, to accept the severance offer, stating,

> I enclose herewith Ken Cereola's December 21, 2007 correspondence which offered my client three months severance without regard to the release of any claims.[7] On behalf of my client, I am accepting the same with the understanding that this was not a dirty trick by Sunnen Products Company to be used as leverage against my client. . . . In this regard, it is understood my client did not voluntarily resign or quit, but was forced out of his employment. . . .

(Riback Cert. Ex. P)

Sunnen has not paid the severance.

After Houghton stopped working for Sunnen, and after he filed this suit, he became aware that Sunnen had terminated an industrial salesman whose sales territory included New Jersey. In January, 2009, Houghton applied for the spot even though Sunnen did not advertise the position.  At the time, Sunnen had already started the interview process with a candidate whom it found through a recruiter.  (Butler Cert. Ex. G)  After that candidate withdrew his name from consideration, Sunnen offered the open spot to Ken Cereola (Houghton's former supervisor) but he declined the offer.  Thereafter, Sunnen split the open territory among three younger existing industrial salesmen instead of hiring Houghton.  The parties do not dispute that

---

[7] The December 21, 2007 letter says nothing about potential or existing claims.

after Sunnen began the interview process with its initial candidate, but before Houghton applied for the spot, Sunnen instituted a company-wide wage and hiring freeze.

Houghton alleges that Sunnen violated the New Jersey Law Against Discrimination ("NJ LAD"), N.J.S.A. 10:5-1 et seq., by discriminating against him on the basis of his age.  He also asserts that he had a severance agreement with Sunnen which Sunnen breached, and that Sunnen retaliated against him for filing this lawsuit.  Houghton' Second Amended Complaint contains five counts against Sunnen: (1) wrongful termination on the basis of age in violation of N.J.S.A. 10:5-12(a); (2) failure to hire on the basis of age in violation of N.J.S.A. 10:5-12(a); (3) retaliation by failing to hire Houghton in violation of N.J.S.A. 10:5-12(d); (4) retaliation by revoking the severance offer in violation of N.J.S.A. 10:5-12(d); and (5) breach of the severance agreement.

Sunnen moves for summary judgment on all counts.  Houghton cross-moves for summary judgment on Counts 4 and 5.

## II.

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).

"'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'– that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'" *Conoshenti v. Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*). The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

### III.

#### A.

Count 1 of Houghton's complaint alleges wrongful termination.

New Jersey's Law Against Discrimination declares it unlawful for an employer to discharge an individual "because of" the individual's age. N.J.S.A. 10:5-12(a). The well-known *McDonnell*

9

*Douglas* burden shifting analysis applies. *See Zive v. Stanley Roberts, Inc.*, 182 N.J. 436, 447-50 (2005).[8]  Houghton must establish his prima facie case of discrimination. *See id.* at 447-48.  Then Sunnen must put forth a legitimate non-discriminatory reason for the adverse employment action. *See id.* at 449.  Lastly, Houghton must put forth evidence that could reasonably support a conclusion that the non-discriminatory reason was pretext for a discriminatory motive. *See id.* at 449-50.

In the context of a reduction in force, a plaintiff establishes a prima facie case of age discrimination by showing that "(1) statutory protections against age discrimination apply to him; (2) he was laid off from a job for which he was qualified; and (3) other, younger, workers were treated more favorably." *Murray v. Newark Housing Authority*, 311 N.J. Super. 163, 172 (Law Div. 1998).  With regard to the last element, the

---

[8] Houghton also argues that he has produced direct evidence of age discrimination that satisfies the *Price Waterhouse v. Hopkins,* 490 U.S. 228 (1989), standard for mixed-motive cases. The Court disagrees.  Houghton relies on the June 2007 meeting of *industrial* salesmen, where management inquired into retirement dates, as direct evidence of discrimination.  This evidence however, is not direct evidence of discrimination *against Houghton.*  Houghton was an automotive salesman, not an industrial salesman, and Sunnen never made a similar inquiry to automotive salesmen.
  To be clear, however, such evidence may be relevant to proving Houghton's indirect case, at least insofar as Houghton argues that the industrial sales meeting is evidence of Sunnen's discriminatory motive or plan.

"focal question" is "whether the claimant's age, in any significant way, made a difference in the treatment he was accorded by his employer." *Petrusky v. Maxfli Dunlop Sports Corp.,* 342 N.J. Super. 77, 82 (App. Div. 2001).

Sunnen argues that Houghton's wrongful termination claim fails because the undisputed record is clear that Sunnen eliminated its entire automotive sales division. If Houghton's theory of his case was based solely on Sunnen's decision to eliminate the division, Sunnen's argument might well prevail.[9] However, Houghton alleges more. He claims that Sunnen treated the reduction in force as an opportunity to retain younger sales people in non-automotive sales positions, while not offering similar opportunities to older salesmen, including Houghton. According to Houghton, he was left without a job at Sunnen because Sunnen eliminated his division *and also* did not offer him another position with the company, as it did with other, younger employees.

Indeed, Houghton has put forth evidence supporting his theory. The undisputed record demonstrates that at the June 2007 meeting, when management announced that only two of the four men in attendance would be retained in other sales positions, Sunnen had already chosen the two younger men. Rick Saindon and Bob Dolder

---

[9] *See, e.g., Jakimas v. Hoffmann-LaRoche, Inc.*, 485 F.3d 770, 789 (3d Cir. 2007) ("[The employee] has failed to establish his prima facie case. There is no evidence that [the employer] treated younger employees better than older employees-- everyone in the Technical Services Division lost their jobs at Roche.").

11

were to be re-trained as industrial salesmen, while Houghton and Doug Treutelaar were only offered independent contractor positions.[10]

The evidence with regard to Richard Woodward, when viewed in the light most favorable to Houghton, provides even more support for the conclusion that Sunnen favored younger workers.  Even after Woodward rejected the industrial sales position Sunnen offered him, Sunnen created a new position for him, whereas Sunnen did no such thing for either Houghton or Treutelaar.[11]

This evidence, taken together, is sufficient to establish the key element of Houghton's prima facie case-- that Sunnen treated Houghton less favorably than younger employees.[12]

Sunnen has put forth a legitimate non-discriminatory reason for not offering Houghton an industrial sales position.  According to Sunnen, its decision "hinge[d] on two things: location and the ability to assume industrial responsibilities."  (Cereola 30(b)(6) Dep. p. 81-82) Sunnen asserts that Houghton lacked the industrial

---

[10]  The present record before the Court does not establish the ages of many of Sunnen's employees.  Houghton asserts in his brief, without any citations to the record, that Rick Saindon was 50 years old; Bob Dolder was 55 years old; and Doug Treutelaar was 59 years old.  Sunnen does not dispute that Saindon and Dolder were younger than Houghton and Treutelaar.

[11]  Houghton asserts in his brief that Woodward was 48 years old.

[12]  Sunnen concedes for the purposes of its motion, that Houghton is a member of the protected class and that he was qualified for the automotive sales position he held at Sunnen.

machine shop background to be an industrial salesman and that there was already an industrial salesperson covering the territory in which Houghton lived.  (Id. at p. 82-85)

There is sufficient record evidence, however, to raise a jury question as to pretext.  It is undisputed that Rick Saindon and Houghton had the same experience, and relative success, in automotive sales, yet Sunnen retrained only Saindon for an industrial position.  With regard to why Sunnen made the decision to only retrain Saindon, Sunnen's 30(b)(6) witness testified:

>     Q:   Why was [Saindon] qualified to move from automotive to industrial?
>
>     A:   He was interviewed . . . and the contention was that he would be possible with training to call on industrial customers.
>
>     Q:   But what distinguishes [Saindon] from [Houghton] being able to transfer his skills into the industrial?
>
>     A:   In the interview process . . . it was determined it's possible that he could call on industrial customers.
>
>     . . .
>
>     Q:   Okay.  Why wasn't Mr. Houghton put through the industrial training?
>
>     A:   We didn't feel he was qualified to call on industrial accounts.
>
>     . . .
>
>     Q:   Why wasn't [Houghton] put through [the interview] process?
>
>     A:   The interview was never offered to him. . . . The people who interviewed felt that he would not pass the interview.

13

>     . . .
>
>     Q:   It was . . . a subjective decision . . . not to . . .
>          interview based on the idea that Mr. Houghton couldn't
>          meet the standards even though [he and Saindon] had
>          the same background, correct?
>
>     A:   Correct.

(Cereola 30(b)(6) Dep. p. 74-75)

This testimony, when viewed in the light most favorable to Houghton, presents an internal inconsistency: Sunnen asserts that it determined qualification for industrial retraining based on interview performance but determined prior to any interview that Houghton was not qualified. A reasonable juror could discredit Sunnen's proffered reason based on this inconsistency.

Sunnen's assertion that location disqualified Houghton (See Cereola 30(b)(6) Dep. p. 84-85) also could be found inconsistent. Sunnen argues that Houghton did not live within an industrial territory with an open sales position, and explains that Saindon was offered an industrial position because he lived in a territory with an opening. However, it is undisputed that living outside of a territory with an open industrial sales position did not disqualify Richard Woodward. Sunnen offered him an industrial position outside of the territory in which he lived. Thus, a reasonable juror could also discredit Sunnen's assertion that they didn't retrain Houghton for an industrial position merely because

he lived in the wrong territory.[13]

In summary, Houghton has established his prima facie case of age discrimination and there is sufficient record evidence to raise a triable issue of fact about whether Sunnen's reason for Houghton's differential treatment was pretextual. Accordingly, Sunnen's Motion for Summary Judgment on Count 1 will be denied.

**B.**

Houghton's failure to hire claim (Count 2) is based on his January, 2009 application for an industrial sales position. Just as the LAD prohibits discharging an individual because of his age, it also prohibits an employer from "refus[ing] to hire or employ" an individual because of his age. N.J.S.A. 10:5-12(a). The *McDonnell Douglas* framework applies. *See Viscik v. Fowler Equip. Co.*, 173 N.J. 1, 13-14 (2002).

In failure to hire cases, a plaintiff establishes a prima facie case by showing that he "(1) belongs to a protected class; (2) applied for . . . a position for which he or she was objectively qualified; (3) was not hired . . . ; and that (4) the employer sought to, or did fill the position with a similarly-qualified person." *Viscik*, 173 N.J. at 14.

Sunnen asserts that Houghton cannot establish his prima facie

---

[13] Houghton also asserts that Sunnen "gerrymandered" the sales territories to create an open position in the sales territory where Saindon lived. Houghton argues that this is further evidence of Sunnen's discriminatory intent.

15

case, arguing that Houghton was not objectively qualified for an industrial sales position; and that Sunnen never actually filled the position, rather it "restructured" industrial sales territories to eliminate the open spot and split the sales responsibilities between existing industrial sales people. The Court need not rule on these arguments however, because even assuming that issues of disputed material fact exist as to Houghton's prima facie case, nothing in the record supports an inference of pretext.

The undisputed record demonstrates that after Sunnen contacted a recruiter to find a qualified candidate for the open industrial sales position, but before Houghton applied for the position, Sunnen instituted a company-wide hiring freeze in anticipation of a "potential major economic slowdown." (Butler Cert. Ex. G) Specifically, Sunnen submits documentary evidence that on December 2, 2008, Sunnen management sent an email to employees entitled "Wage & Hiring Freeze." (Id.) The email announced, "[e]ffective immediately, we will implement a wage freeze for all employees. . . . Also, all hiring should be suspended without prior approval." (Id.)[14] Sunnen asserts that for this reason it did not hire Houghton, and instead looked to existing Sunnen employees to fill the open spot.

Houghton fails to even argue that Sunnen's hiring freeze was pretextual. Moreover, nothing in the record supports a finding of

---

[14] Houghton admits that Sunnen instituted a hiring freeze. (Pl's Resp. to Def's SUF ¶ 23)

16

weaknesses or inconsistencies in Sunnen's reason.  Indeed, the record evidence is entirely consistent with Sunnen's proffered reason.  Sunnen started the interview process with its first candidate[15] in October, 2008.  (Butler Cert. Ex. G)  At that time, there was no hiring freeze.  Then in December, 2008, Sunnen announced the hiring freeze.  (Id.)  Only after the freeze was in place, in January, 2009, did Houghton first apply for the industrial sales spot.  Rather than hire Houghton, or any other non-employee, Sunnen sought to, and eventually did, fill the spot with existing employees.

Because the record evidence fails to establish a triable issue of fact as to pretext, Sunnen's Motion for Summary Judgment as to Count 2 will be granted.

### C.

In Count 3, Houghton asserts that Sunnen refused to hire him in January, 2009 in retaliation for filing this lawsuit.

This claim fails for reasons similar to why Count 2 fails.  To establish retaliation under the LAD, Houghton must establish a prima facie case; Sunnen must put forth a non-retaliatory reason for its adverse employment decision; and then Houghton must establish pretext.  *See Woods-Pirozzi v. Nabisco Foods,* 290 N.J. Super. 252, 274 (App. Div. 1996).  However, as already discussed,

---

[15] Sunnen has not disclosed the candidate's name because he chose to remain with his employer at the time.

17

there is no evidence supporting an inference that Sunnen's reason for not hiring Houghton-- the hiring freeze-- was not the true reason that Houghton was not hired.  Because there is no evidence to support a conclusion that Sunnen's decision not to hire Houghton was motivated by a retaliatory motive, summary judgment will be granted to Sunnen on Count 3.

**D.**

Lastly, the Court addresses Counts 4 and 5 together.

In Count 5 Houghton alleges that Sunnen has breached their severance agreement by not paying Houghton his severance.  Sunnen argues that a contract was never formed.  The Court agrees with Sunnen.

"An enforceable contract requires an offer, an acceptance, consideration, and a meeting of the minds upon all the essential terms of the agreement." *Senior Settlements, LLC v. Growth Trust Fund, et al.*, No. 05-777, 2008 U.S. Dist. LEXIS 15639 at *12-13 (D.N.J. Feb. 27, 2008) (Simandle, D.J.) (applying New Jersey law).  It is black letter law that "[t]he power of acceptance created by an ordinary offer is terminated by a communicated rejection."  1-3 Corbin on Contracts § 3.41.[16]  "When an offer has been rejected, it ceases to exist, and a subsequent attempted acceptance is

---

[16] *See also* Restatement (Second) of Contracts § 38(1) ("An offeree's power of acceptance is terminated by his rejection of the offer, unless the offeror has manifested a contrary intention.").

18

inoperative."  1 Williston on Contracts § 5:3; *cf. State v. Williams*, 277 N.J. Super. 40, 47 (App. Div. 1994) ("Under standard contract law principles, a defendant's rejection of a plea offer operates as a termination of the defendant's right to accept the offer.").

Houghton admits that he told a payroll representative and his supervisor that he would not sign Sunnen's letter offering him "retirement."  Therefore a reasonable factfinder could only conclude that Houghton rejected Sunnen's offer.[17]  Houghton's attempted acceptance through his attorney's letter of February 18, 2008 did not create a contract, as a matter of law, because Houghton's power of acceptance had already terminated.

Accordingly, as to Count 5, Sunnen's Motion for Summary Judgment will be granted and Houghton's Motion for Summary Judgment will be denied.

Count 4 alleges that Sunnen revoked its severance offer in retaliation for Houghton filing this lawsuit.  As set forth above, once rejected, an offer ceases to exist.  Because a reasonable factfinder could only conclude that Houghton rejected Sunnen's offer, the offer ceased to exist.  Therefore, as a matter of law

---

[17]  Even if a reasonable factfinder might conclude that Houghton's refusal to sign the letter was not an outright rejection but rather a counteroffer asking Sunnen to change "retirement" to "termination," the conclusion is the same. "It is an elementary tenet of contract law that an offeree's counteroffer serves as a rejection of the original offer." *Kamden v. Lieblich*, No. A-3226-04T1, 2005 N.J. Super. Unpub. LEXIS at *7 (App. Div. Oct. 28, 2005).

and logic, Sunnen could not have revoked an offer that no longer existed.  Accordingly, as to Count 4, Sunnen's Motion for Summary Judgment will be granted and Houghton's Motion for Summary Judgment will be denied.

**IV.**

For the reasons set forth above, Sunnen's Motion for Summary Judgment will be denied as to Count 1, and granted with respect to all other counts of the Amended Complaint.  Houghton's Motion for Summary Judgment on Counts 4 and 5 will be denied.[18]  An appropriate order accompanies this Opinion.

Dated: May 4, 2010                                s/ Joseph E. Irenas
                                         **Joseph E. Irenas, S.U.S.D.J.**

---

[18] Sunnen has also moved to strike the report of Houghton's expert.  The Court has two principal doubts with regard to the proposed expert testimony.  First, it is not clear that Houghton's proposed expert-- a former Sunnen employee-- is "qualified as an expert;" and even if he is, his proposed testimony may not be "the product of reliable principles and methods."  Fed. R. Evid. 702.  Second, at least at this time, it is not clear that the expert's principal opinion-- that Houghton's knowledge of honing equipment qualifies him to be an industrial sales man-- is relevant to the legal issues remaining in the case, insofar as Sunnen's proffered reason for not retaining Houghton does not appear to be that Houghton lacked honing equipment knowledge.
  These reservations notwithstanding, ruling on the Motion to Strike at this time would be premature.  The Court would rather let the case develop further.  Accordingly, the motion will be dismissed without prejudice with leave to renew the motion prior to, or during, trial.